Sonja **RANER** et al., Plaintiffs,

v.

Joel **EDELMAN** et al., Defendants.

No. 73 C 404.

United States District Court, N. D. Illinois, E. D.

Nov. 2, 1973.

Kenneth K. Howell, Sheldon H. Roodman, James D. Weill, Legal Aid Society of Chicago, Chicago, Ill., for plaintiffs.

William J. Scott, Atty. Gen., Springfield, David L. Daniel and Cook County Dept. Aid, Cook County State's Atty., Bernard Carey, State's Atty., by Mercer Cook, Asst. State's Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

### Motion to Dismiss

MAROVITZ, District Judge.

Local Aid to Medical Indigents (AMI) is a program of payment of the medical bills of persons who are not so poor that they qualify for general assistance, but who are too poor to pay all their medical bills. The program was established pursuant to Article VII of the Illinois Public Aid Code. Ill.Rev.Stat. ch. 23, § 7–1 et seq. Although AMI is not a federal categorical assistance program, the Illinois Department of Public Aid has exercised the option available to them to acquire federal reimbursement of administrative costs.

This action is brought by plaintiffs, individually and on behalf of all other recipients and potential recipients of Aid to the Medically Indigent. The gravamen of plaintiffs' complaint is that

AMI, outside of Chicago and Cicero, pays for all necessary medical care of eligible recipients, including physicians' and dental services, drugs, and hospital out-patient and clinic care, as well as in-patient care, while AMI in Chicago and Cicero pays only the costs of in-patient hospital bills for eligible recipients.

Plaintiffs theories are threefold. First, plaintiffs claim that the policy of geographical discrimination in disbursing funds under AMI, which policy has been promulgated and applied by the Illinois Department of Public Aid (IDPA), its director Edelman, the Cook County Department of Public Aid (CCDPA), and its director Daniel, deprives plaintiffs and members of their class of their rights under the Fourteenth Amendment to the U. S. Constitution, which prohibits a state from denying equal protection of the laws. Second, plaintiffs claim that because IDPA, Edelman, CCDPA, and Daniel accept partial recovery of their administrative posts from the federal government, as permitted under Title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.), it is required that they abide by the provisions of 42 U.S.C. § 1396(a)(1) and 42 U.S.C. § 1396(a)(10)(B)(ii) which compel a statewide program and equal services to all persons within an eligible group, respectively. Plaintiffs allege violation of this statutory provision. Third, plaintiffs claim violation of the requirements of Ill.Rev.Stat. ch. 23, §§ 7–1 and 7–1.1, that "aid in meeting the costs of necessary medical, dental, hospital, boarding or nursing care, or burial shall be given under this Article" to all eligible persons and that "the local governmental unit in which the person is at the time of his illness or death shall give or cause to be given the necessary aid."

There are three motions pending in this suit: a motion to dismiss by defendant Edelman, Acting Director of the Illinois Department of Public Aid, a motion for leave to proceed as a class by plaintiffs, and a motion for summary judgment by plaintiffs. Only the first of these motions is under consideration here.

Defendant Edelman's motion to dismiss challenges the court's jurisdiction, contending that the case is solely state-related, and not involving any federal question; that the plaintiff has failed to exhaust administrative remedies as a necessary prerequisite to invoking federal jurisdiction; and that the complaint involves the interpretation and application of state law to specific fact situations, and the court should exercise the abstention doctrine.

### Jurisdiction of the Court

■ Plaintiffs predicate jurisdiction on 28 U.S.C. §§ 1343(3) and (4), claiming a cause of action under 42 U. S.C. § 1983 (the Civil Rights Act), and on 28 U.S.C. § 1331 (federal question jurisdiction). Plaintiffs contend that the policy enunciated in IDPA Official Bulletins 64.30 and 66.78, and CCDPA Official Bulletins 60.13 and 67.21, of reduced benefits in Chicago and Cicero constitutes a geographical discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment. Certainly the discriminatory application of a valid state statute raises a substantial federal question. *See,* Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L. Ed.2d 647 (1967); Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). If plaintiffs have been disadvantaged by the IDPA classification, we are required to determine if the classification is a legitimately defensible difference. Cole v. Housing Authority of City of Newport, 435 F.2d 807 (1st Cir. 1970); Ely, Legislative and Administrative Motivation in Constitutional Law, 79 Yale L.J. 1205, 1223–1224 (1970). The traditional test requires, the difference to have some rational relationship to a permissible legislative goal, but if a fundamental right is involved, the difference is defensible only if it satisfies a compelling state interest. However, we need not now define the burden of

justification to be shouldered by defendants; to resolve this aspect of defendant Edelman's motion we need only conclude, assuming for purposes herein the verity of well-pleaded facts, that a cause of action under the Constitution and laws of the United States has been stated. We find the allegations of this complaint actionable under 42 U.S.C. § 1983. *See,* Rothstein v. Wyman, 303 F.Supp. 339 (S.D.N.Y.1969), vac. on other grounds, 398 U.S. 275, 90 S.Ct. 1582, 26 L.Ed.2d 218 (1970). Having so concluded, the court also finds it clear without elaboration that the alleged violation of 42 U.S.C. § 1396 et seq. is actionable under 42 U.S.C. § 1983, and that the court may invoke its jurisdiction over the related state claim.

*Exhaustion of Administrative Remedies*

■ Plaintiffs claim that pursuit of their administrative remedies in this case would be futile. The remedy provided by Ill.Rev.Stat. ch. 23, § 11–8, is to the County Department of Public Aid, which is bound by the rules and regulations of the Illinois Department—those same bulletins which are the subject of this suit. There is no administrative remedy, presumably, for consideration of the issue herein.

The requirement of exhaustion of administrative remedies has been seriously undercut in actions under the Civil Rights Act. In McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), the plaintiff petitioners claimed that white and black students in a school in St. Clair County, Illinois, were being segregated in violation of the Constitution, and the Court held that the federal complaint could be prosecuted without prior exchange of possible remedies before the Superintendent of Public Instruction. In what appears to be one of two possible alternative grounds of decision the Court said, "it is by no means clear that Illinois law provides petitioners with an administrative remedy sufficiently adequate to preclude prior resort to a federal court for protection of their federal rights." *Supra,* at 674–675, 83 S.Ct. at 1437.

Four years later, in Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967), the plaintiffs were allowed to bypass state administrative remedies and to maintain a federal action under 28 U.S.C. § 1343 and 42 U.S.C. § 1983 challenging the validity of a state's denial of welfare benefits. In a brief opinion, the Court cited *McNeese* for the proposition that "relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided [an administrative] remedy," 389 U.S. at 417, 88 S.Ct. at 526 (brackets in original).

Defendant Edelman relies on McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), wherein the Court stressed the value of the doctrine of exhaustion of administrative remedies in avoiding "premature interruption" of agency proceedings, in letting the agency "develop the necessary factual background upon which decisions should be based," in giving the agency the first chance to exercise discretion or to apply its special expertise, and in promoting efficiency in both the judicial and administrative process. 395 U.S. at 193–194, 89 S.Ct. at 1663. Some commentators explain this difference as a distinction drawn between civil rights cases and those involving federal administrative action. *See,* e. g., Davis, Administrative Law Treatise § 20.01, at 646 (1970 Supp.) (criticizing distinction). The *McNeese* and *Damico* line of cases is strongly-established and well-recognized precedent which governs this case; we find it unnecessary for plaintiffs to further pursue administrative remedies to prosecute this case, particularly in view of the apparent inadequacy such a remedy would have here.

*Abstention*

■ This final point may be treated rather cursorily. The regulations prescribing reduced benefits for residents of Chicago and Cicero are unambiguous, and there is no skein of state law whose

unentanglement by the clear authority of a state court would eliminate the necessity of our confronting the federal statutory and Constitutional questions involved herein. Nor do we believe that a determination of the issues in this case will needlessly interfere with the administration by a state of its own affairs. Litigation of welfare benefit cases have become commonplace in the Courts of the United States. E. g., King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Rothstein v. Wyman, supra; Boddie v. Wyman, 434 F.2d 1207 (2nd Cir. 1970); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

In conclusion, it is the judgment of this court that it has jurisdiction over the constitutional, federal statutory, and state statutory claims, for the above-stated reasons, and that we should invoke such jurisdiction accordingly.